JUDITH THOMPSON, Plaintiff-Appellee, *v*. BOARD OF REVIEW, ILLI-
NOIS DEPARTMENT OF LABOR, *et al.*, Defendants-Appellants.

Second District   No. 82—855

Opinion filed December 12, 1983.

NASH, J., dissenting.

Neil F. Hartigan, Attorney General, of Springfield (Kathleen M. Lien, Assistant Attorney General, of counsel), for appellants.

David Wolowitz, of Prairie State Legal Services, of Geneva, for appellee.

JUSTICE VAN DEUSEN delivered the opinion of the court:

Defendant, Board of Review, Illinois Department of Labor (Board) determined that plaintiff, Judith L. Thompson, was ineligible to receive Illinois unemployment insurance benefits from May 25, 1980, through August 2, 1980, because she had failed to apply for available suitable work when so directed by the State employment service. On review under the Administrative Review Act (Ill. Rev. Stat. 1981, ch. 110, par. 3—101 *et seq.*), the trial court found the Board's decision to be against the manifest weight of the evidence and reversed that portion of the Board's decision which denied plaintiff benefits during the period from May 25, 1980, through August 2, 1980, and which permitted recoupment of benefits paid to plaintiff during that period. The Illinois Department of Labor has appealed, contending that the trial court erred in finding its administrative decision to be against the manifest weight of the evidence.

Section 603 of the Unemployment Insurance Act (Ill. Rev. Stat. 1981, ch. 48, par. 433) provides in pertinent part "[a]n individual shall be ineligible for benefits if he has failed, *without good cause* *** to apply for available, suitable work, when so directed by the employment office or the Director ***" (Emphasis added.)

The single and narrow issue presented on this appeal is whether plaintiff had good cause for not applying for work as directed by the State Job Service. No issue is raised concerning the suitability or availability of the work.

On May 27, 1980, the State Job Service referred plaintiff to a possible job in West Chicago. Plaintiff lived in Carpentersville. Plaintiff's previous employment, which terminated May 18, 1980, had been with Pheasant Run, a resort motel located in St. Charles. Pheasant Run was 22 miles from plaintiff's home. Amco Containers, the West Chicago employer, was an additional four to five miles away. Plaintiff had worked in room service at Pheasant Run, earning $2.65 per hour plus "excellent" tips. The job opening at Amco was for a utility person, with wages of $4.03 per hour. Plaintiff, after notifying Job Service, did not go to apply for the job at Amco as she did not have money to buy gas for the trip to West Chicago.

We turn first to the question of what constitutes good cause under section 603 of the Unemployment Insurance Act. In *Keystone Steel & Wire Division, Keystone Consolidated Industries v. Department of Labor* (1976), 37 Ill. App. 3d 704, the appellate court, in considering the contention that claimants voluntarily left work without good cause contrary to section 603 of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 433), found that a substantial reduction in wages can be "good cause" for leaving employment, depending upon the attendant circumstances. (37 Ill. App. 3d 704, 706-07.) While we have not found any other Illinois cases on point, good cause has been described in cases from other States. Good cause for refusing work must involve circumstances which are real, substantial, and reasonable, not arbitrary, immaterial, or capricious. (*Meyer v. Skyline Mobile Homes* (1979), 99 Idaho 754, 589 P.2d 89; *Bentz v. Unemployment Compensation Board of Review* (1959), 190 Pa. Super. 582, 155 A.2d 461.) Good cause may not, however, be predicated on mere inconvenience. (*Meyer v. Skyline Mobile Homes* (1979), 99 Idaho 754, 589 P.2d 89.) An important consideration is whether the claimant's behavior manifests good faith consistent with a general desire to be employed. (*Ennis v. Pennsylvania Unemployment Compensation Board of Review* (1975), 18 Pa. Commw. 344, 336 A.2d 438; see *In re Watson* (1968), 273 N.C. 629, 161 S.E.2d 1.) Good cause should not be analyzed in purely subjective and personal terms which are unique to the claimant, but must be considered in light of a standard of reasonableness for the average person. (*Meyer v. Skyline Mobile Homes* (1979), 99 Idaho 754, 589 P.2d 89.) However, if a reasonable person would view the circumstances involved as being real, substantial, and compelling, purely personal factors may constitute good cause. (99 Idaho 754, 589 P.2d 89; see *Wallace v. Bureau of Unemployment Compensation* (Ohio C.P. 1959), 81 Ohio Abs. 495, 160 N.E.2d 580.) Some courts have noted that, to constitute good cause, the reason for refusal must be one

which pertains to the job itself or, if a personal factor, the reason must be of a temporary and emergency character. *Swanson v. Minneapolis-Honeywell Regulator Co.* (1953), 240 Minn. 449, 61 N.W.2d 526; see *Meyer v. Skyline Mobile Homes* (1979), 99 Idaho 754, 589 P.2d 89.

On the other hand, good cause may not be viewed in such a restrictive manner in Illinois, where the statute does not require that good cause be a reason connected with the employer, and where it may be based on personal or domestic considerations. See *Conlon v. Director of Division of Employment Security* (Mass. 1980), 413 N.E.2d 727; *In re Watson* (1968), 273 N.C. 629, 161 S.E.2d 1; see Ill. Rev. Stat. 1981, ch. 48, par. 433.

■ The Department of Labor, in its Manual of Benefit Precedent Decisions, has noted that good cause for refusing work is not confined to causes directly attributable to the employment or the employing unit, but may be found in the claimant's personal circumstances or the unsuitability of the particular job for the individual claimant. (M.B.P.D.T. No. 157, R.W. 210.05 (Jan. 31, 1979).) Thus, according to the Department's interpretation of the statute, good cause may be found in the claimant's domestic circumstances, health, and prospects for other work as well as in the type of work offered, its wages, hours, and location. (M.B.P.D.T. No. 157, R.W. 210.05 (Jan. 31, 1979).) Because application for employment and acceptance of a job offer involve different levels of commitment of time and resources, the facts which constitute good cause could differ in each situation. However, the basic principles as to what constitutes good cause appear equally applicable in either situation. (See *Palucci v. Department of Employment Security* (1977), 135 Vt. 156, 376 A.2d 14.) In examining the Thompson case, the Board applied as a standard that whether an individual has good cause for failing to apply for work as directed should be judged by the reasonableness of his actions in light of the circumstances which exist in his particular case. We agree that such standard is proper.

■ Once the legal standard of "good cause" is established, the determination of what particular conduct meets that standard is ordinarily a factual issue. In an administrative hearing such as the present one, the claimant has the burden of proof that she had good cause for not applying for work as directed. (See *Brown v. Board of Review* (1972), 8 Ill. App. 3d 19, 23.) Agency findings on questions of fact are *prima facie* true and correct, and they cannot be disturbed by this court nor a trial court unless they are against the manifest weight of the evidence. (Ill. Rev. Stat. 1981, ch. 110, par. 3—110.) Courts will not reweigh the evidence adduced at an agency hearing;

their review is restricted to making an assessment of whether the agency's final decision was just and reasonable in light of the evidence presented. (*Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 471-72, *cert. denied* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229.) Where a conclusion opposite to that of the agency's is "clearly evident" from the evidence, a court must overturn the agency's factual finding. *Legones v. License Appeal Com.* (1968), 100 Ill. App. 2d 394, 403; *Division-Kostner Currency Exchange, Inc. v. Montgomery* (1974), 18 Ill. App. 3d 225, 228; *Pryka v. Board of Fire & Police Commissioners* (1979), 67 Ill. App. 3d 210, 213-14.

■ The Board's decision in this matter rests entirely on the record made at the hearing before its referee on December 23, 1980. The only evidence presented at the hearing was the testimony of the plaintiff. The former employer did not appear in opposition to the claim and no evidence was adduced or offered other than the testimony of plaintiff.

The uncontradicted testimony of the plaintiff established that she was 39 years of age, single, without a high school diploma and the mother of a three-year-old child. Job Services scheduled a job interview at Amco Container which plaintiff thought she could accept because it was not much further than Pheasant Run. Plaintiff had no money and did not have gas to drive to West Chicago. She called Job Services and notified them that she was not going to be able to keep the interview. The Board referee asked if she had called and tried to set another interview date for herself. Plaintiff answered in the negative. While further inquiry by the referee revealed that the plaintiff had not been given a phone number for Amco Containers, the questioning failed to disclose what information she had been given by Job Services concerning the Amco Container interview.

Plaintiff further testified that during the period in question, May 28, to August 2, she was able and available for work, actively seeking a job, and contacting about two or three prospective employers a week. She added that she was still unemployed but wished that she was working. Plaintiff also testified that she had always been healthy and available to work every day, that there had not been a day that she had not looked in the paper for employment, and that she would always go out and look if she ever had a lead on a job.

Transportation difficulties may be good cause for a refusal to apply for a particular job; especially when considered in light of other circumstances in the case, such as the plaintiff's job search efforts and knowledge of his or her responsibilities regarding eligibility for unemployment insurance benefits. (*Ennis v. Pennsylvania Unemploy-*

*ment Compensation Board of Review* (1975), 18 Pa. Commw. 344, 336 A.2d 438.) A lack of effort to make transportation arrangements is a fact which may indicate that plaintiff failed to act in good faith or in a reasonable manner (see *Unemployment Compensation Board of Review v. DelGrosso* (1976), 24 Pa. Commw. 292, 355 A.2d 622; *Szojka v. Unemployment Compensation Board of Review* (1958), 187 Pa. Super. 643, 146 A.2d 81.) However, the record here is devoid of any evidence in this regard. A reading of the Board's decision indicates that the principal element in its finding that plaintiff had not met the "good cause" standard was the single fact that she did not attempt to reschedule the Amco interview. The Board argues that this fact illustrated plaintiff's lack of interest in pursuing work opportunities. However, the evidence established that plaintiff did not have the phone number of her prospective employer and the record is silent as to what information she did have. The record is also silent on other matters, such as whether she had available alternative means of transportation on the interview date, whether at a later date plaintiff had the means to secure funds for gasoline, and whether Job Services had advised her to reapply when she notified them that she could not keep the initial appointment. In the absence of any evidence concerning these matters, little weight can be ascribed to the single isolated fact that plaintiff did not reschedule her interview. On the other hand, the validity of plaintiff's excuse for not attending the interview is bolstered both by her good faith notification to the Job Services office that she would not be able to attend the interview as well as her repeated efforts to find a job, making two or three employer contacts per week plus searching daily for job opportunities in the newspaper.

We conclude that the single fact of plaintiff's failure to attempt to reschedule her interview date, in light of all the other undisputed evidence, was insufficient to overcome the plaintiff's *prima facie* case that she had good cause for not attending the scheduled work interview, and that she had not failed to apply without good cause for available suitable work as directed by the Job Service office. We agree with the trial court that the Board's decision to the contrary is against the manifest weight of the evidence. The judgment of the trial court is affirmed.

Affirmed.

SEIDENFELD, P.J., concurs.

JUSTICE NASH, dissenting:

I respectfully dissent having concluded plaintiff did not establish she had "good cause" to fail to apply for work as directed by the State employment service. I also consider that the majority appears to have shifted the burden for proof of good cause from plaintiff to the agency.

It is established in this State that the receipt of unemployment insurance benefits is a conditional right and the burden of proving eligibility before the agency is on the claimant. (*Yadro v. Bowling* (1980), 91 Ill. App. 3d 889, 892-93, 414 N.E.2d 1244; *Rosenbaum v. Johnson* (1978), 60 Ill. App. 3d 657, 662, 377 N.E.2d 258; *Brown v. Board of Review* (1972), 8 Ill. App. 3d 19, 23, 289 N.E.2d 40.) The only evidence relevant to the issue of good cause offered by plaintiff was that she failed to apply for the job opening to which she had been referred because she had no funds with which to buy gas for her car. The majority refers to other evidence which, if found in the record, would be relevant to the issue of good cause. It notes, however, that the record is devoid of any evidence in that regard and concludes that plaintiff's excuse she lacked money for gas established a *prima facie* case she had good cause not to attend the scheduled job interview which was not overcome by the other evidence.

No Illinois case has held that the burden of proof will shift to the administrative agency once a claimant has made a *prima facie* case for benefit eligibility under the Act. The court did so in *Sanchez v. Unemployment Insurance Appeals Board* (1977), 20 Cal. 3d 55, 569 P.2d 740, 141 Cal. Rptr. 146; however, that view was rejected by our appellate court in *Yadro v. Bowling* (1980), 91 Ill. App. 3d 889, 893, 414 N.E.2d 1244.

A telephone call by a claimant advising that he is out of gas, is ill or has no baby-sitter should not be sufficient to shift the burden of proof to the agency to establish claimant lacked good cause to avoid a job opportunity. As I understand it, that is not the law in Illinois and for that reason decline to join with the majority.